UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JOSE BERNAZARD,

      Plaintiff,

   - against -

JOSEPH KOCH,

      Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
15-CV-642 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

   This action arises out of the arrest of Plaintiff Jose Bernazard by New York City Police Department ("NYPD") officers on June 16, 2013. Following his arrest, Plaintiff was convicted of attempted murder of a police officer in the second degree, among other counts. Plaintiff, appearing *pro se* and proceeding *in forma pauperis*, brings the present action against the arresting officer, Defendant NYPD Officer Joseph Koch ("Defendant" or "Officer Koch"), alleging that Defendant used excessive force to arrest Plaintiff in violation of 42 U.S.C. § 1983. Defendant moves for summary judgment on the basis that (1) Plaintiff's conviction for the attempted murder of Defendant collaterally estops Plaintiff from establishing his excessive force claim against the officer, and (2) Defendant is entitled to qualified immunity. Because the Court finds that Defendant is entitled to qualified immunity, his motion for summary judgment is granted.

## BACKGROUND

**I. Relevant Facts[1]**

---

[1] Unless otherwise noted, a standalone citation to Defendant's 56.1 Statement (Dkt. 91) denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to Defendant's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

On June 16, 2013, Defendant was off-duty and in the area of 144-22 South Road in Jamaica, New York. (Def. 56.1[2], Dkt. 91, at ¶¶ 1-2.) At around 10:00 p.m. that night, Plaintiff entered the residence of his "on and off" girlfriend, Christina Rodriguez, located at 144-22 South Road. (Def. 56.1, at ¶ 3.) At that time, Plaintiff was not residing with Ms. Rodriguez. (Def. 56.1, at ¶ 4.) Upon entering the residence, Plaintiff got into a domestic dispute with Ms. Rodriguez; he struck her in the face and shoved her into a door, causing injury to her face and head. (Def. 56.1, at ¶¶ 5-8.) Plaintiff also pushed Jacob Rodriguez, Ms. Rodriguez's nine-year-old son, who fell down. (Def. 56.1, at ¶ 9.) There was a lot of screaming in the residence. (Def. 56.1, at ¶ 10.) Defendant was present inside the residence at some point during the domestic dispute with his gun drawn.[3] (Def. 56.1, at ¶ 11.) Upon noticing Defendant's off-duty weapon, Plaintiff's left hand moved toward, and made contact with, the gun.[4] (Def. 56.1, at ¶ 12.) In the same motion, Plaintiff shoved Defendant into a wall, and Defendant's gun discharged, hitting Plaintiff in the left hand.

---

[2] "Def. 56.1" refers to Defendant's 56.1 Statement. (Dkt. 91.) Plaintiff also submitted a 56.1 statement of his own (Dkt. 93-1) and indicated in his opposition to Defendant's motion those facts he disputes (Dkt. 83.)

[3] The parties disagree as to when Defendant arrived at Ms. Rodriguez's residence. Plaintiff testified that Defendant was inside the residence prior to Plaintiff's entrance and that Defendant appeared "out of nowhere" and pointed his gun in Plaintiff's face. (Deposition of Jose Bernazard ("Bernazard Dep."), Dkt. 90-2, at 60:18-61:15, 66:15-19, 68:14-19, 76:1-77:9.) Defendant testified that he was at a family event near Ms. Rodriguez's residence, when he heard screaming and noticed that it was coming from a little boy standing at the top of stairs leading to Ms. Rodriguez's apartment. (Trial Tr., Dkt. 90-1, 524:2 - 529:3). Defendant testified that he climbed the stairs, identified himself as a police officer, entered the apartment, noticed "a man holding a lady by the neck," and drew his off-duty weapon. (Trial. Tr. 531:20-534:11.) Despite the disagreement as to the precise time of Defendant's arrival at Ms. Rodriguez's apartment, it is undisputed that he was inside the apartment at some point during the domestic disturbance.

[4] The parties disagree as to whether Defendant identified himself as a police officer during the altercation. Plaintiff claims that Defendant did not identify himself as an officer at any point during the incident. (Bernazard Dep., at 68:20-23.) Defendant testified at Plaintiff's criminal trial, that he announced he was an officer at some point during the incident. (Trial Tr. 531:1-7; 533:5-19.)

2

(Def. 56.1, at ¶¶ 13-14.) Plaintiff and Defendant fell to the floor; Defendant's gun discharged again and Defendant sustained a gunshot injury to his left hand. (Def. 56.1, at ¶¶ 15-17.) Both Plaintiff and Defendant got up from the floor, and Defendant shot Plaintiff in the neck. (Def. 56.1, at ¶¶ 18-19, Bernazard Dep., at 83:6-10.) The next day, June 17, 2013, Plaintiff was arrested on charges stemming from the incident. (Def. 56.1, at ¶ 21.)

Plaintiff went to trial in Queens County Supreme Court and, on April 18, 2016, was convicted of Attempted Murder of Joseph Koch in the Second Degree, Burglary in the First Degree, Attempted Assault in the First Degree, Assault in the Second Degree, Aggravated Criminal Contempt, two charges of Assault in the Third Degree, Criminal Obstruction, Criminal Trespass in the Second Degree, Criminal Mischief in the Fourth Degree, three charges of Criminal Contempt in the Second Degree, Aggravated Criminal Contempt, and Stalking in the First Degree. (Def. 56.1, at ¶¶ 22-23.) On May 19, 2016, Plaintiff was sentenced to a minimum term of thirty-four years in prison. (Def. 56.1, at ¶ 28; State Court Sentence, Dkt. 90-4.)

## II. Procedural History

Plaintiff filed his complaint in this action on February 3, 2015. (Dkt. 1.) The case was stayed pending the disposition of Plaintiff's criminal trial. (Dkts. 18, 21, 34.) The Court lifted the stay on April 19, 2016. (Dkt. 36.) Defendant answered Plaintiff's complaint on May 25, 2016. (Dkt. 40.) The parties completed discovery on March 23, 2017. (Dkt. 74.) Defendant now moves for summary judgment on the single claim of excessive force. (Dkt. 88.)

## **STANDARD OF REVIEW**

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013) (quoting *Weinstein v. Albright*, 261 F.3d 127, 132

(2d Cir. 2001)); *see also* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "Material" facts are facts that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 322). Once a defendant has met his initial burden, the plaintiff must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (citation and internal quotation marks omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (alterations in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Additionally, plaintiffs who proceed *pro se* are entitled to have their pleadings held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, a *pro se* plaintiff's papers should be interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted). Yet this liberal standard does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond*, 00-CV-3725, 2001 WL 527484, at *2 (S.D.N.Y.

May 16, 2001). Mere conclusory allegations are insufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

**DISCUSSION**

**I.  Plaintiff's Criminal Conviction Does Not Collaterally Estop his Excessive Force Claim**

In this action, Plaintiff alleges that Defendant Koch used excessive force against Plaintiff when Defendant drew his gun and shot Plaintiff.[5] Defendant argues that Plaintiff's conviction of attempted murder of a police officer in the second degree collaterally estops him from claiming that excessive force was used against him. The Court finds that, under the circumstances of this case, collateral estoppel does not bar Plaintiff's excessive force claim.

The doctrine of collateral estoppel "applies when § 1983 plaintiffs attempt to relitigate in federal courts issues decided against them in state criminal proceedings." *Allen v. McCurry*, 449 U.S. 90, 102 (1980). There are four requirements that must be met for a court to apply collateral estoppel: 1) the issues of both proceedings must be identical, 2) the relevant issues were actually litigated and decided in the prior proceeding, 3) there must have been a full and fair opportunity for the litigation of the issues in the prior proceeding, and 4) the issues were necessary to support a valid and final judgment on the merits in the prior proceeding. *Central Hudson Gas & Elec. Co. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995).

"Collateral estoppel requires a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted, and the jury instructions, in order to

---

[5] In his complaint, Plaintiff broadly alleges that Defendant used excessive force but does not specify the exact point or points at which the excessive force occurred. Instead, Plaintiff argues that Defendant used excessive force at some point after Defendant drew his off-duty weapon following the domestic violence incident inside Ms. Rodriguez's apartment.

determine what issues were actually litigated and necessary to support a final judgment on the merits." *Brown v. New York State S. Ct. for Second Jud. Dist.*, 680 F. Supp. 2d 424, 428 (E.D.N.Y. 2010) (quoting *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)). The burden of proof with respect to whether an issue is identical to one that was raised and necessarily decided in the prior action rests squarely on the party moving for preclusion. *Sullivan*, 225 F.3d at 166.

Here, the state court instructed the jury to determine what actions Plaintiff took on June 16, 2013 and whether he attempted to kill Defendant, among other offenses, that day.[6] (Jury Charge, Dkt. 90-5, at 10-12.) However, the jury considered only the legality of Plaintiff's conduct and made no findings regarding Defendant's behavior. While the jury's determination that Plaintiff committed acts that constitute attempted murder in the second degree—*i.e.*, that he "engaged in conduct that tended to affect the commission of Murder in the Second Degree" and "did so with the intent to cause the death of Joseph Koch" (Def. 56.1, at ¶ 24)—strongly suggests that any force used by Defendant could not have been excessive, this finding cannot be preclusively made without the additional jury determination as to what actions Defendant took and when in the sequence of events he took them. For example, the undisputed facts presented by Defendant in his motion suggest that while off-duty and not in uniform, he pointed a weapon at Plaintiff moments before Plaintiff engaged in conduct that the jury found to be attempted murder. Although Defendant's drawing of his weapon might have been justified by Plaintiff's conduct toward his girlfriend and the girlfriend's son, the jury's verdict does not shed sufficient light on the officer's

---

[6] In convicting Plaintiff of Attempted Murder in the Second Degree, the jury found that: "defendant Jose Bernazard attempted to cause the death of Joseph Koch; that he engaged in conduct that tended to affect the commission of Murder in the Second Degree" and "that the defendant did so with the intent to cause the death of Joseph Koch." (Def. 56.1, at ¶ 25.) The trial court defined "conduct which tends to affect the commission of that crime" as "conduct which comes dangerously close or very near to the completion of the intended crime." (Def. 56.1, at ¶ 25.)

6

behavior and the precise sequence of events, such that the Court can determine whether Defendant's use of force was reasonable at all points in the encounter on June 16, 2013.

Even though the jury found Plaintiff guilty of attempting to murder Defendant, because the issue presently before this Court—*i.e.*, the reasonableness of Defendant's actions—and the issues previously before the state court in Plaintiff's criminal case—*i.e.*, whether *Plaintiff* attempted to kill *Defendant*—are not identical, the Court does not rely on collateral estoppel to dismiss Plaintiff's claim. *See Hemphill v. Schott*, 141 F.3d 412, 416 (2d Cir. 1998) (estoppel "extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution.") (citation omitted). Plaintiff, therefore, is not collaterally estopped from claiming that Defendant used excessive force even though Plaintiff attempted to murder Defendant. *See McNamee v. City of New York*, No. 98-6275, 2002 WL 441177 at *4 (S.D.N.Y. March 21, 2002) (holding that where the jury necessarily found that plaintiff had a gun and shot with the intention of killing the police officer and the court could not "fathom how [plaintiff] could prove his excessive force claim," that collateral estoppel was nonetheless inappropriate because the officer's conduct was not at issue in the criminal trial).

At the same time, Plaintiff's conviction ensures that he *is* collaterally estopped from arguing that he did not attempt to kill Defendant from the moment Plaintiff pushed Defendant against the wall. *Hemphill*, 141 F.3d at 416 (noting that even where collateral estoppel does not preclude a claim, a § 1983 plaintiff may not relitigate facts found by the jury in a previous criminal case). Plaintiff's conduct was "identical" in both the criminal and present proceeding and was found by the criminal trial jury, beyond a reasonable doubt, to constitute attempted murder of Defendant. That aspect of Plaintiff's conduct was "actually litigated and decided in the prior proceeding" when the jury returned a guilty verdict as to the counts listed above, and Plaintiff had

7

a "full and fair opportunity" to litigate that issue in the prior criminal proceeding. *Central Hudson*, 56 F.3d at 368. Lastly, the issues of whether Plaintiff intended to kill Defendant and engaged in conduct which tended to effect commission of that crime[7] were "necessary to support a valid and final judgment on the merits." *Id.* With this application of collateral estoppel in mind, the Court considers Defendant's claim of qualified immunity.

## II. Defendant Koch is Entitled to Qualified Immunity

Qualified immunity protects government officials from civil damages liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether the relevant law was clearly established, a court considers "the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014), *cert. denied sub nom. Torresso v. Terebesi*, 135 S. Ct. 1842 (2015).

"Whether a defendant officer's conduct was objectively reasonable is a mixed question of law and fact." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007). The ultimate question of qualified immunity, *i.e.*, whether it was objectively reasonable for an officer to believe that his conduct did not violate a clearly established right, is to be decided by the court. *Id.* Yet whether it was objectively reasonable for an officer to believe that his acts did not violate the plaintiff's clearly established rights "has its principal focus on the particular facts of the case." *Kerman v.*

---

[7] "The crime of attempted second degree murder is committed when, with the intent to cause the death of another person, one engages in conduct which tends to effect commission of that crime (*see* Penal Law §§ 110.00; 125.25[1]). Where those elements converge, an attempted murder has occurred, regardless of whether the defendant has killed or even injured his or her intended target." *Fernandez v. Dufrain*, 11 F. Supp. 2d 407, 414 (S.D.N.Y. 1998).

8

*City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) (quoting *Hurlman v. Rice*, 927 F.2d 74, 78–79 (2d Cir. 1991)).

An excessive force claim depends on the objective reasonableness of the officer's conduct under the circumstances. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The "objective reasonableness standard" must be applied "using a totality of the circumstances approach that includes an examination of the severity of the crime at issue, the immediate threat the suspect poses to the officer and others, and whether the suspect is resisting arrest or attempting to flee." *Diggs v. New York Police Dep't*, 04-CV-1849 (CBA) (LB), 2005 WL 3533158, at *3 (E.D.N.Y. Dec. 22, 2005). Yet the fact that "a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force . . . it does not give the officer license to use force without limit." *Sullivan*, 225 F.3d at 165-66. The force used by the officer must be "reasonably related to the nature of the resistance and the force used, threatened or reasonably perceived to be threatened, against the officer." *Id*. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Phelps v. Szubinski*, 577 F. Supp. 2d 650, 661 (E.D.N.Y. 2008) (quotation omitted). More specifically, "[e]ven if defendants' actions were unreasonable under current law, qualified immunity protects officers from the sometimes hazy border between excessive and acceptable force." *Cruz v. City of N.Y.*, 232 F. Supp. 3d 438, 451 (S.D.N.Y. 2017) (citation omitted). "If the officer's mistake as to what the law requires is reasonable the officer is entitled to the immunity defense." *Id.* (quotation omitted).

Here, the "objective reasonableness" of Defendant's actions must be assessed in light of the threat that Plaintiff posed. As previously discussed, the application of collateral estoppel dictates that there is no genuine issue of material fact regarding Plaintiff's attempt to kill Defendant

9

before Defendant shot Plaintiff in the neck. *See Diggs*, 2005 WL 3533158, at *4 (dismissing Section 1983 action alleging excessive force where there was "no triable issue of material fact as to whether plaintiff attempted to murder [the officer]."). The law is clear that when a suspect threatens an officer with a weapon, the officer may use deadly force in response. *Biggs v. City of New York*, 08-CV-8123, 2010 WL 4628360, at *5 (S.D.N.Y. Nov.16, 2010) (concluding that plaintiff's admission during plea allocution that he had threatened and endangered officer by "pointing and waving a knife in close proximity to" the officer provided factual record that justified officer's use of deadly force); *Estate of Kenneth Jackson v. City of Rochester*, 705 F. Supp. 779, 783 (W.D.N.Y.1989) ("[I]t was objectively reasonable for [Police Officer] to use deadly force in defense of [Plaintiff's] life-threatening actions.") (citing *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985)).

Defendant's decision to draw his weapon and use deadly force was objectively reasonable in light of the undisputed facts in this case. Defendant responded to a domestic dispute between Plaintiff and Ms. Rodriguez, in which Plaintiff struck and shoved Ms. Rodriguez and pushed her young son. Even though Plaintiff and Defendant disagree on when Defendant entered the apartment, they agree that he was present during, and witnessed, the domestic dispute between Plaintiff and Ms. Rodriguez and that Defendant drew his gun during, and in response to, that altercation. (Bernazard Dep., at 76:1-77:9; Trial. Tr. 531:22-536:20.) It is also undisputed that when Plaintiff noticed Defendant's drawn gun, Plaintiff pushed Defendant against the wall, causing Defendant's gun to discharge and hit Plaintiff in the hand. The two men continued to struggle, falling to the floor, at which time Defendant's gun again discharged, this time hitting Defendant in the hand. (Def. 56.1, at ¶¶ 13-17.) When the two men stood up, Defendant shot Plaintiff in the neck. (Def. 56.1, at ¶¶ 18-19; Bernazard Dep., at 83:5-18.) The Court finds that,

10

under these circumstances, a reasonable officer would have perceived that Plaintiff posed a potentially mortal threat to Ms. Rodriguez, her son, and Defendant. Therefore, Defendant was authorized to initially draw his weapon and subsequently use deadly force in response. *Jackson*, 705 F. Supp. at 784 (holding that when faced with imminent (or actual) use of deadly force against themselves or others, police officers may respond in kind); *Merzon v. County of Suffolk*, 767 F. Supp. 432, 448 (E.D.N.Y. 1991) ("An officer is authorized to use deadly physical force when he or she reasonably believes such to be necessary to defend the officer or another from what he or she reasonably believes to be the use of imminent use of deadly physical force").[8]

Accordingly, Defendant's conduct in drawing his weapon and eventually shooting Plaintiff was objectively reasonable under the Fourth Amendment and he is entitled to qualified immunity. *Biggs*, 2010 WL 4628360 at *6 ("We believe [the objective reasonableness] standard provides the test for evaluating both the scope of the officer's qualified immunity as well as the plaintiff's claim of excessive force under the [F]ourth [A]mendment.") (citation omitted).

## **CONCLUSION**

For the reasons stated herein, Defendant's motion for summary judgment is granted. Plaintiff's claim of excessive force is dismissed. The Court certifies pursuant to 28 U.S.C. 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45

---

[8] To the extent Plaintiff is asserting that the initial discharge of Defendant's weapon, which hit Plaintiff in the hand, was an excessive use of force, the Court finds, based on the undisputed evidence that includes Plaintiff's deposition and Defendant's trial testimony, that a jury would be unable to find that this initial shooting/discharge was intentional or excessive. Rather, the Court finds that the initial discharge of Defendant's weapon was accidental and resulted from Plaintiff shoving Defendant's hand against the wall.

(1962). The Clerk of Court is respectfully directed to enter judgment for Defendant and close the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 8, 2018
 Brooklyn, New York